**BLANDIN PAPER COMPANY, a Minnesota corporation, Plaintiff,**

v.

**GREAT NORTHERN RAILWAY COMPANY, a Minnesota corporation, and Chicago and North Western Railway Company, a Wisconsin corporation, Defendants.**

Civ. No. 3–66–64.

United States District Court
D. Minnesota,
Third Division.

March 15, 1967.

Oppenheimer, Hodgson, Brown, Wolff & Leach, by Lehan J. Ryan, St. Paul, Minn., for plaintiff.

Curtis H. Berg, St. Paul, Minn., Stuart F. Gassner and John C. Danielson, Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MILES W. LORD, District Judge.

This is a proceeding under 49 U.S.C. § 16(2) to enforce a reparation order issued by the Interstate Commerce Commission (ICC) on January 13, 1966. The case was tried to the Court without a jury. Plaintiff's case consisted of a number of exhibits and the administrative record before the ICC, and defendants' case consisted of a number of exhibits and testimony on the routing and operating practices of the railroads involved.

Plaintiff shipped 54 carloads of paper from Grand Rapids, Minnesota to Des Moines, Iowa between July of 1961 and June of 1962. A rate of 48½ cents per 100 pounds was charged and collected for these shipments.[1] Plaintiff contends that this was excessive. Plaintiff contends that the proper rate is 36½ cents per 100 pounds, a rate applicable to shipments of paper from Grand Rapids to Chicago. The basis of plaintiff's contention is an assertion that Des Moines is an "intermediate point" for traffic from Grand Rapids to Chicago. Thus, plaintiff seeks to invoke the intermediate point provision of the tariff which provides that where a rate is not named in the tariff for the destination station and where the station is "intermediate to a point to which a commodity rate on said article is published in * * * this tariff via a route through the intermediate point over which such commodity rate applies from the same origin" the applicable rate is that published "to the next point beyond to which a commodity rate is published herein * * * via the same route."

---

1. Charges were collected on all of the shipments at the rate assailed but refunds have been made to the plaintiff, based on the rate sought, on three shipments, one moving on February 8, 1962 and two on May 17, 1962, which weighed 109,940, 111,944, and 112,016 pounds each. The defendants assert that refunds on these shipments were made through error.

Plaintiff contends that Des Moines is intermediate to Chicago from Grand Rapids on three possible routes. These routes are described in the hearing examiner's report. No normal, customary, cognizable volume of shipments has ever moved from Grand Rapids to Chicago via any of these three routes. The distances from Grand Rapids to Chicago via these routes are as follows: Route 1— 941 miles; Route 2—890 miles; Route 3 —983 miles. The short line distance from Grand Rapids to Chicago over the lines of the Great Northern and North Western is 637 miles, and the distance over the route normally used between these points is 650 miles. Thus, it appears that Route 1 is about 45 percent circuitous from Grand Rapids to Chicago compared to the route of normal movement. Routes 2 and 3 are about 37 percent and 51 percent circuitous, respectively. Route 3 involves considerable directional back-haul. Routes 1 and 2 involve relatively little directional back-haul, but these routes involve considerable out-of-line haul over an elongated loop.

The hearing examiner concluded that Route 3 is an unreasonable route from Grand Rapids to Chicago[2] and thus could not invoke the intermediate point rule. However, the hearing examiner concluded that Routes 1 and 2 are reasonable routes invoking the intermediate point rule. Accordingly, the hearing examiner recommended reparation, and this recommendation was adopted by the ICC.

In order to invoke the intermediate point rule the proposed routes must be reasonable routes. It appears that the rule generally applied by the ICC in cases involving the intermediate point rule is that reparation will be granted if the indirect route is not more than 50 percent circuitous compared to the corresponding short traffic route, but that such relief will be denied in cases involving more than 50 percent circuity. See Armour & Co. v. Baltimore & Ohio Ry. Co., 253 ICC 238 (1942). By this test, Routes 1 and 2 are reasonable routes because they involve only 45 and 37 percent circuity, respectively.

However, the Eighth Circuit has rejected the ICC test and denied reparation on the ground of unreasonableness of route in a case involving 35 percent circuity. See A. E. West Petroleum Co. v. Atchison, T. & S. F. Ry. Co., 8 Cir., 212 F.2d 812 (1954).[3] The *A. E. West Petroleum Co.* case involved reparation on shipments of petroleum products destined for Kansas City, Missouri, it being contended that Kansas City is intermediate to Moravia, Iowa from Bradford, Pennsylvania. Shipment to Moravia from Bradford via Kansas City involved considerable directional back-haul and was 35 percent circuitous. No normal, customary, cognizable volume of shipments ever moved from Bradford to Moravia via Kansas City. The Eighth Circuit held that such routing was unreasonable and, therefore, could not invoke the intermediate point rule.[4]

Since the degree of circuity involved in Routes 1 and 2 of the instant case is greater than the 35 percent circuity involved in the *A. E. West Petroleum Co.* case, the Court must conclude that these routes are unreasonable and, therefore, incapable of invoking the intermediate point rule. While the hearing examiner considered the *A. E. West Petroleum Co.* case controlling as to Route 3, he did not consider this case controlling as to Routes 1 and 2. The hearing examiner inter-

---

2. The plaintiff has not challenged in this proceeding the conclusion of the hearing examiner with regard to Route 3.

3. In following the *A. E. West Petroleum Co.* case, one judge has held that a route involving only 22.5 percent circuity is unreasonable. See United States v. Interstate Commerce Commission, 142 F.Supp. 741 (D.C.D.C.1955).

4. In the *A. E. West Petroleum Co.* case, it was also contended that Kansas City was an intermediate point for traffic moving from Bradford to Cedar Rapids, Iowa. This routing involved considerable directional back-haul and was 62 percent circuitous. The Eighth Circuit held that this routing was unreasonable and, therefore, incapable of invoking the intermediate point rule.

preted this case as condemning only routes involving unreasonable directional back-haul and observed that this evil is not present in either Routes 1 or 2. The instant Court, however, cannot accept this interpretation of the *A. E. West Petroleum Co.* case. The evil condemned in that case was unreasonable circuity, directional back-haul being merely one variety of circuity. The out-of-line haul over an elongated loop involved in Routes 1 and 2 is as unreasonable as circuity of a similar degree resulting from directional back-haul. Plaintiff appears to argue that the *A. E. West Petroleum Co.* case should be distinguished on the ground that the real basis for the decision therein was the fact that Moravia is not directionally the next point beyond Kansas City to which a commodity rate was published, because Kansas City is further from Bradford, Pennsylvania than is Moravia.[5] In the instant case, however, Des Moines, being only 536 rail miles from Grand Rapids, is closer by rail to Grand Rapids than is Chicago, and, therefore, Chicago is directionally the next point beyond Des Moines. The Court, however, must reject plaintiff's distinction, for while the fact that Moravia was not directionally the next point beyond Kansas City was a basis for the decision in *A. E. West Petroleum Co.* case, the circuity of routing traffic from Bradford to Moravia through Kansas City was an independent basis for the decision. Moreover, it appears from the opinion in that case that circuity was the primary basis of the decision.

Accordingly, the Court concludes that routing rail traffic from Grand Rapids to Chicago via Des Moines is unreasonable; that such unreasonable routing cannot invoke the intermediate point rule so as to entitle plaintiff to the rate sought; that the order of the ICC granting reparation herein is, therefore, contrary to law; and that plaintiff's complaint herein should be and is hereby dismissed.

Let judgment be entered accordingly.

---

5. Cedar Rapids, likewise, was not directionally the next point beyond Kansas City in the *A. E. West Petroleum Co.* case.